UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
RAFAEL MARTE, FELIX PENA on behalf of themselves
and all others similarly situated,

        **REPORT AND
        RECOMMENDATION**

                Plaintiffs,

       -against-                    CV 16-53 (SJF) (ARL)

WESTBURY MINI MART, INC., WESTBURY DELI &
GROCERY, INC., HUNTINGTON DELI, INC.,
STOP & GO MINIMARKET NY CORP., STOP & GO
MINIMARKET CORP., RIVERHEAD DELI, CORP.,
FERMIN NUNEZ, FREDDY COLLADO, MARIA G.
MORONTA, JOSE R. RODRIGUEZ, JOSE G. TINEO,
VICTORINO D. NUNEZ,

                Defendants.
-----------------------------------------------------------------------X

**LINDSAY, Magistrate Judge:**

       Plaintiffs Rafael Marte ("Marte") and Felix Pena ("Pena") (collectively, "Plaintiffs")

bring this putative collective action under the Fair Labor Standards Act, 29 U.S.C. §§ 201 et seq.

("FLSA"), and the New York Labor Law §§ 190 *et seq.* ("NYLL") and its supporting regulations,

seeking to recover, *inter alia*, unpaid overtime compensation and spread-of-hours pay.   Before

the Court, on referral from District Judge Feuerstein, is the motion by defendants Westbury Mini

Mart, Inc.; Westbury Deli & Grocery, Inc.; Huntington Deli, Inc., Stop & Go Minimarket NY

Corp.; Stop & Go Minimarket Corp.; Riverhead Deli Corp. ("collectively, the "Stores"); Fermin

Nunez; Freddy Collado; Maria G. Moronta; Jose R. Rodriguez; Jose G. Tineo; and Victorino D.

Nunez (collectively with the Stores, the "Defendants") to dismiss the complaint as well as the

motion by Plaintiffs for leave to file an amended complaint.   For the reasons that follow, the

Court respectfully recommends that Defendants' motion to dismiss the complaint be granted and

1

Plaintiffs' motion for leave to file an amended complaint be granted in part and denied in part.

## BACKGROUND

### I.      The Complaint

Plaintiff commenced this action on January 7, 2016.   The complaint alleges that (1) Plaintiff Marte was employed by Defendants as a cashier from November 23, 2009 through October 2015 at three different deli/groceries located in Westbury, Huntington Station and Riverhead, New York, Compl. ¶¶ 9, 16; and (2) Plaintiff Pena worked for Defendants as a cook in the Riverhead grocery from September 2006 through September 2015, *id.* ¶ 13.   Plaintiffs allege that Defendants – acting as a single integrated enterprise that jointly employed Plaintiffs – failed to pay Plaintiffs for overtime hours worked and spread-of-hours wages during the term of their employment.   Additionally, Plaintiffs allege that Defendants unlawfully retaliated against them in retaliation for bringing the instant action in violation of the FLSA and assert claims for record keeping violations under the NYLL.   *Id.* ¶¶ 163-176.

### II.     Procedural Background

Plaintiffs filed their complaint on January 7, 2016.   Defendants served the instant motion to dismiss on March 29, 2016, and Plaintiffs served opposition papers on April 29, 2016.   The motion was fully briefed and filed with the Court on May 6, 2016.   Less than one week later, on May 12, 2016, Plaintiffs served Defendants with a motion for leave to amend the complaint. That motion was fully briefed and filed on June 1, 2016.   By Order dated June 2, 2016, Judge Feuerstein referred the motion to dismiss to the undersigned.   In addition, the motion to amend is deemed referred pursuant to Judge Feuerstein's Individual Rules.[1]

---

[1] Judge Feuerstein's Individual Rules provide that "all non-dispositive motions, including

The proposed first amended complaint ("PAC") does not set forth any new claims, raise any new legal theories, or join any new defendants.   Instead, Plaintiffs seek leave to amend their complaint to include new facts to bolster their existing claims.   In this regard, Plaintiffs claim some of the new facts were not obtained until after Defendants filed their motion to dismiss, while others were known but not included because Plaintiffs' counsel believed the facts pled were sufficient to state causes of action under the FLSA and the NYLL.

## DISCUSSION

**I.      Standard of Law**

     **A.      Motion to Dismiss**

The Supreme Court clarified the appropriate pleading standard in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), in which the court set forth a two-pronged approach to be utilized in analyzing a motion to dismiss.   District courts are to first "identify [ ] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679.   Though "legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.*   Second, if a complaint contains "well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*   "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.   The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a [d]efendant has acted unlawfully." *Id.* at 678 (citing

_____

motions to amend pleadings, are to be considered referred to the Magistrate Judge assigned to the case."   Individual Rules of Hon. Sandra J. Feuerstein, U.S.D.J., Rule 4.

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556-57 (2007) (internal citations omitted)).

**B.      Motion to Amend**

Under Rule 15(a), a party may amend its pleading once as a matter of right within 21 days after serving it, or 21 days after service of an answer or motion to dismiss, whichever is earlier. Fed. R. Civ. P. 15(a)(1)(A)-(B).   Here, Defendants served their motion to dismiss on March 29, 2016, and Plaintiffs served their motion seeking leave to amend on May 12, 2016, beyond the 21-day period.

Rule 15(a) provides that in cases where a party cannot amend as a matter of course, "[a] party may amend its pleading only with the opposing party's written consent or the court's leave."   Fed. R. Civ. P. 15(a)(2).   A court "should freely give leave when justice so requires" and such leave is in the court's discretion.   *Id.*   As often noted by the Second Circuit, "[l]eave to amend, though liberally granted, may properly be denied for: 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.'"   *Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

Here, Defendants argue that leave to amend should be denied because the proposed amendments are futile and they will be prejudiced if they have to file another motion to dismiss if Plaintiffs' motion is granted.   An amendment is futile if the proposed claim cannot withstand a motion to dismiss under Rule 12(b)(6).   *See, e.g., Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162, 185 (2d Cir. 2012).   Thus, in deciding whether an amendment is futile, the Court uses "the same standard as those governing the adequacy of a filed pleading."   *Ricciuti v. N.Y.C.*

4

*Transit Authority*, 941 F.2d 119, 123 (2d Cir. 1991).

## II.      Analysis

### A.      Plaintiffs' Overtime Claims as Alleged in the Complaint

Defendants argue that the complaint fails to adequately allege a cause of action for unpaid overtime.   For the reasons stated below, the Court agrees.[1]

The Second Circuit clarified the specificity required in order to properly plead a claim for overtime under the FLSA in three separate decisions.   In *Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106 (2d Cir. 2013), the Second Circuit affirmed the district court's dismissal of FLSA overtime claims and held that "in order to state a plausible FLSA overtime claim, a plaintiff must sufficiently allege 40 hours of work in a given workweek as well as some uncompensated time in excess of the 40 hours."   *Id.* at 114.   Soon thereafter, in *Nakahata v. New York–Presbyterian Healthcare System, Inc.*, 723 F.3d 192 (2d Cir. 2013), the Second Circuit again affirmed the dismissal of FLSA overtime claims, stating that "[t]o plead a plausible FLSA overtime claim, [p]laintiffs must provide sufficient detail about the length and frequency of their unpaid work to support a reasonable inference that they worked more than forty hours in a given week."   *Id.* at 201.   Finally, in *Dejesus v. HF Mgmt. Servs., LLC*, 726 F.3d 85 (2d Cir. 2013), the plaintiff alleged that she worked "more than forty hours per week during 'some or all weeks' of her employment" and was not paid for overtime for her hours in excess of forty.   *Id.* at 86.   The Second Circuit held that these bare allegations amounted to no more than a recitation of the statutory language of the FLSA and failed to state a plausible claim for overtime.   *Id.* at 89.

---

[1] Defendants' motion to dismiss does not address Plaintiffs' remaining NYLL claims or Plaintiffs' retaliation claims under the FLSA.

Here, the complaint alleges that Plaintiff Marte was employed by all three Stores "at various times from November 2009 through October 2015," Compl. ¶ 133, and worked "sixty hours over a period of six days straight days," *id.* ¶ 128.   The complaint does not identify how many hours Marte worked at each store per week or what days he worked at each store.   With regard to Plaintiff Pena, the complaint alleges that Pena was employed at the Riverhead store from November 2006 through October 2015, *id.* ¶ 144, and "worked sixty hours over a period of six straight days," *id.* ¶ 139.   Plaintiffs' blanket allegations of working sixty hours over six straight days, with no details as to the hours, days or weeks worked, are insufficient to state a claim for failure to pay overtime "in a given workweek."   *Lundy*, 711 F.3d at 114. Accordingly, the Court respectfully reports and recommends that Defendants' motion to dismiss Plaintiffs' overtime claims be granted.[2]

**B.     Plaintiffs' Overtime Claims as Alleged in the Proposed Amended Complaint**

Plaintiffs attempt to cure the defect in their pleading by seeking leave to file an amended complaint which adds more detail about Plaintiffs' employment.   Specifically, with regard to Plaintiff Pena, the PAC alleges that Pena worked for Defendants as a cook exclusively at the Riverhead store from November 2006 through October 2015.   PAC ¶¶ 168-69.   It further alleges that "[f]rom 2009 to 2015, Plaintiff worked at the Riverhead location from 2:00 pm to 11:00 pm on Mondays, Tuesdays, Thursdays, Fridays, Saturdays, and Sundays" *id.* ¶ 172, and that "Plaintiff worked nine hours a day, six days a week, for a total of 54 hours a week," *id.* ¶ 170.

In contrast to Pena, who only worked at the Riverhead store, Plaintiff Marte alleges that

---

[2] Because the requirements under the FLSA are similar to the NYLL, the Court's conclusions as to the FLSA claims apply equally to the NYLL claims.   *DeJesus*, 726 F.3d at 89 n.5.

he worked at all three locations at various times.   More specifically, he alleges that "[f]rom 2009 to 2014, Plaintiff worked at the Riverhead location from 2:00 pm to 11:00 pm on Mondays, Thursdays, and Sundays," *id.* ¶ 150, and at the "Westbury location from 5:00 am to 2:00 pm on Tuesdays and Fridays, and from 2:00 pm to 11:00 pm on Saturdays," *id.* ¶ 151.   He further alleges that in 2015, Plaintiff worked at the "Riverhead location from 2:00 pm to 11:00 pm on Mondays, Thursdays, and Sundays"; at the "Westbury location from 5:00 am to 2:00 pm on Wednesdays, and from 2:00 pm to 11:00 pm on Saturdays"; and at the "Huntington location from 2:00 pm to 11:00 pm on Fridays."   *Id.*   Based on these shifts, Marte alleges that he worked nine hours a day, six days a week, for a total of 54 hours a week.   *Id.* ¶ 148.   In addition, Marte alleges that "[t]hroughout the duration of his employment with Defendants, Plaintiff often worked an additional five or six hours each week, on top of the 54 hours he was scheduled to work each week."   *Id.* ¶ 156.   For example, Marte "was often required to continue to work after his scheduled shift ended at 11:00 pm, in order to pick up various supplies for the stores, *id.* ¶ 157, and "[o]n days when Plaintiffs work schedule at the Westbury location was supposed to end at 2:00 pm, he was often required to stay another hour or two until the store manager, Defendant Fermin Nunez' nephew Edwin Nunez, arrived," *id.* ¶ 158.

The Court finds that the proposed allegations do more than just "repeat the language of the statute," *DeJesus*, 726 F.3d at 89, and are sufficient to "'nudge'" Plaintiffs' claim "'from conceivable to plausible,'" *id.* (quoting *Twombly*, 550 U.S. at 570).   Taking the allegations as true for purposes of this motion, Pena asserts that he worked 9 hours a day from 2:00 p.m. to 11:00 p.m., six days a week excluding Wednesdays, for a total of 54 hours per week from 2009 through 2015 without overtime compensation.   Similarly, Marte alleges that from 2009 through

2014, he worked 9 hours a day from 2:00 p.m. to 11:00 p.m. on Mondays, Thursdays, Saturdays

and Sundays and from 5:00 am to 2:00 pm on Tuesdays and Fridays.   In 2015, Marte alleges he

worked from 2:00 p.m. to 11:00 p.m. on Mondays, Thursdays, Fridays, Saturdays and Sundays

and from 5:00 a.m. to 2:00 p.m. on Wednesdays.   These allegations sufficiently state a claim for

an overtime violation.   *See Burns v. Haven Manor Health Care Center, LLC*, No. 13-CV-5610,

2015 WL 1034881, at *5 (E.D.N.Y. Mar. 10, 2015) (noting that courts "have granted some

leeway in cases" alleging scheduled shifts because such shifts demonstrate that the plaintiffs

worked forty hours in a given week); *Leon v. Port Washington Union Free Sch. Dist.*, 49 F.

Supp. 3d 353, 357-58 (E.D.N.Y. Sept. 30, 2014) (finding complaint sufficiently alleged an

overtime claim where plaintiff alleged "she regularly worked forty hours per week, and provided

sufficient estimates of how much additional time she worked each week – namely 1 ½ to 2 hours

per week" and estimated time she was not compensated for skipping lunch); *Mendez v. U.S.*

*Nonwovens Corp.*, 2 F. Supp. 3d 442, 456-57 (E.D.N.Y. 2014) (denying motion to dismiss where

plaintiffs alleged they were routinely scheduled to work more than forty hours per week and

included hours worked and number of days worked per week).   Plaintiffs' proposed allegations

differ from cases where plaintiffs allege generally that they worked forty hours a week or less but

then speculated that there may have been some weeks in which they worked more than forty

hours.   *See Sampson v. MediSys Health Network, Inc.*, No. 10-CV-1342, 2013 WL 1212655, at

*5 (E.D.N.Y. Mar. 18, 2013) ("It is not sufficient that a 'theoretical[ ]' combination of

'typical[ ]' uncompensated time periods could add up to more than forty (40) hours in an

'unspecified' week or weeks; rather, 'to survive a motion to dismiss, [p]laintiffs must allege

sufficient factual matter to state a plausible claim that they worked compensable overtime in a

workweek longer than 40 hours.'") (quoting *Lundy*, 711 F.3d at 115).   Instead, Plaintiffs allege that they worked fourteen hours of uncompensated time each week and provide the specific days, hours and stores for which they worked.   Accordingly, the Court finds that the PAC sufficiently states a claim for overtime compensation by both Plaintiffs.

Having found that the PAC sufficiently states a claim for overtime pay, the Court turns to the next issue, viz. which Defendants qualify as Plaintiffs' employer so as to be subject to overtime liability.

### C.   Theories of Employer Liability

#### 1.   Plaintiff Pena

Pena alleges that he worked exclusively at the Riverhead store from November 2006 through October 2015.   PAC ¶¶ 168-69.   Although not a model of clarity, the PAC alleges that the Riverhead store was owned by three successive owners during Pena's employment: (1) Defendant Riverhead Deli Corp. from August 2004 - January 2011 with Defendant Maria Moronta identified as principal by the New York State Liquor Authority and listed as CEO of the corporation; (2) Defendant Stop & Go Minimarket from January 2011 - August 2015 with Defendant Freddy Collado identified as principal by the New York State Liquor Authority and listed as CEO of the corporation; and (3) Defendant Stop & Go Minimarket NY Corp. from August 2015 - October 2015 with Defendant Victorino Nunez identified as principal by the New York State Liquor Authority.   *Id.* ¶¶ 31-50, 88-90, 98-100, 129-30.   Each individual owner changed the name of the business, incorporated as a new entity, and individually maintained filings with the New York State Liquor Authority.   *Id.*   Each corporate owner's annual gross sales is alleged to have been no less than $500,000.   *Id.* ¶¶ 36, 44, 50.   In addition, the PAC

alleges that each individual principal controlled the terms and conditions of Plaintiffs'
employment.  *Id.* ¶¶ 91-96, 102-07, 131-36.

Although Pena only worked at the Riverhead store, he asserts his overtime claims against
all Defendants, including the corporate owners of the Westbury store (Westbury Deli & Grocery,
Inc. and Westbury Mini Mart, Inc.) and the Huntington store (Huntington Deli, Inc.), as well as
their respective individual Defendant principals (Fermin Nunez, Jose Rodriguez and Jose Tineo,
respectively), for whom it is alleged controlled the terms and conditions of employment at all
three locations.  *Id.* ¶¶ 71-79, 109-111, 119-21.   Pena asserts such liability under a "single
enterprise" theory by alleging that the Defendants operated as a "single-integrated enterprise that
jointly employed him."   *Id.* ¶ 25.

### 2.    Plaintiff Marte

In contrast to Pena, who only worked at the Riverhead store, Marte alleges that he worked
at all three locations at various times.   Marte does not allege, however, that he worked more than
forty hours a week for any one particular location.   Instead, he alleges that he worked more than
forty hours per week at all three Stores in the aggregate.   As with Pena, Marte attempts to hold
all Defendants liable for his overtime by alleging that the Defendants operated as a
"single-integrated enterprise that jointly employed him."   *Id.* ¶ 25.

Plaintiffs' allegations seem to conflate the single enterprise theory with the joint employer
theory.   Courts have corrected this mistake in other cases noting that:

> [S]ingle employer status exists where two nominally separate
> entities are actually part of a single integrated enterprise so that, for
> all purposes, there is in fact only a single employer. . . . The joint
> employer concept, by contract, is not based on the integration of
> two companies but instead looks to the control two separate
> companies exert over the same employee.

*National Labor Relations Board v. Western Temp. Servs., Inc.*, 821 F.2d 1258, 1266 (7th Cir.

1987) (citations omitted).   In their briefs, the parties focus on the single enterprise theory only.

The Court addresses both theories below.

### 3.      Single Enterprise Allegations

Distinct but closely affiliated entities may be treated as a single employer for FLSA

purposes where "the related activities performed (either through unified operation or common

control) by any person or persons [are] for a common business purpose and includes all such

activities whether performed in one or more establishments or by one or more corporate or other

organizational units . . . ."   29 U.S.C. § 203(r).   "Courts use a three-part test to determine when

an entity is an enterprise: '(1) the entity or entities must engage in related activities,

(2) performed through unified operation or common control, (3) for a common business

purpose.'"   *Berezueta v. Royal Crown Pastry Shop*, No. 12 CV 4380, 2014 WL 3734489, at *4

(E.D.N.Y. July 28, 2014) (quoting *Bowrin v. Catholic Guardian Soc'y*, 417 F. Supp. 2d 449,

465-66 (S.D.N.Y. 2006)).   "Common ownership standing alone does not bring unrelated

activities within the scope of the same enterprise."   29 C.F.R. § 779.211.   As explained in the

relevant regulation, "[i]f, for example, one individual owns or controls a bank, a filing station,

and a factory, the mere fact of common ownership will not make them one enterprise.   However,

if it appears that there is a reasonable relationship of all the activities to a single business purpose

a different conclusion might be warranted."   *Id.*    "'In circumstances where different entities are

involved, the critical inquiry is operational interdependence in fact.   The provision of mutually

supportive services to the substantial advantage of each entity are operationally interdependent

and may be treated as a single enterprise under the Act. '"    *Id.* at 6 (quoting *Bowrin*, 417 F.

Supp. 2d at 458)).

In support of Plaintiffs' claim that the Defendants operated as a single enterprise, the PAC asserts several generalized allegations, including that Defendants "jointly employed" Plaintiffs, that "[e]ach Defendant has had substantial control over the Plaintiffs' working conditions and the unlawful policies and practices alleged herein," that "Defendants have been interrelated and unified during all times relevant," and that "the Stores shared a common management and were centrally controlled and/or owned by one or more of the Defendants." PAC ¶¶ 23-27.   The Court need not accept these conclusory allegations as true.   Nor do several of Plaintiffs' more specific allegations adequately allege an operational interdependence.   In that regard, the PAC alleges that all three Stores paid $200 per month in cash to the same accounting firm, that all employees of the three Stores were paid in cash, and that after other employees brought FLSA and NYLL claims against Defendants, Defendants began paying some employees by checks.   *Id.* ¶¶ 28-30.   These allegations do not plausibly suggest a single enterprise.

In an attempt to portray Defendant Fermin Nunez as a common unifier who exercised control over all of the Defendants, the PAC alleges that Fermin Nunez, the alleged owner of the Westbury store from July 2004 - April 2013, "was or is the owner of the Stores and currently maintains a financial interest in and control over the Stores."   *Id.* ¶ 72.   This vague allegation   – which provides no time frame for his alleged ownership of the Huntington and Riverhead Stores –   contradicts other allegations in the PAC, including the allegations that "[a]ccording to the New York State Department of State website, each location underwent a change of ownership during the period when the violations are alleged to have occurred," *id.* ¶ 18, and each store had its own principal during the relevant time frame who controlled the terms and conditions of

Plaintiffs' employment, *id.* ¶¶ 72, 89-90, 100, 111, 120-21, 130.   While Rule 8(d)(2) permits

parties to plead inconsistent factual allegations, *2004 Stuart Moldaw Trust v. XE L.I.F.E., LLC*,

642 F. Supp. 2d 226, 240 (S.D.N.Y. 2009), no details are provided regarding Nunez' alleged

ownership of the Stores, with the exception of the Westbury store for which it is alleged he was

the principal from October 2015 to the present.   *Id.* ¶ 130.   Moreover, even assuming that

Fermin Nunez had an ownership interest in all three Stores, as noted above, common ownership

alone is not sufficient.

The PAC further alleges that "[d]espite any change in store ownership," Mr. Nunez has

"continued to control the pricing at all three stores, . . . was responsible for approving all

decisions concerning the hiring and firing of employees at all three store locations, . . . was

responsible for handling any violations concerning the sale of tobacco, alcohol, or food stamps at

all three store locations, . . . was responsible for handling any violations concerning the sale of

tobacco, alcohol, or food stamps at all three store locations."   *Id.* ¶¶   21, 73-78.   The PAC

further alleges that Mr. Nunez "has been identified by the Plaintiffs as being the only individual

defendant that they worked for at each location over the past 6 years," *id.* ¶ 22, and that

"Plaintiffs would deliver cash from the stores to Defendant Fermin Nunez at his home; about

$1,200 - $1,500 from the Riverhead location, about $1,800 from the Huntington location, and

about $2,300 - $2,500 from the Westbury location," *id.* ¶ 78.   Taken together, these factual

allegations are insufficient to plead that the separate Defendant entities operated as a single

integrated enterprise and thus qualify as a single statutory "employer" under the FLSA.   While

there may be factual allegations supporting some common control, there are no facts suggesting

that the different entities engaged in related activities for a common business purpose or that their

operations were interdependent.   In fact, the PAC alleges that each individual owner had

substantial control over the working conditions at that owner's particular store.   In addition, the

PAC alleges that Marte was terminated from his position at all three Stores by three different

people.   *Id.* ¶¶ 209-11.   Plaintiffs' argument in their brief that the Defendants engaged in related

activities for the common purpose of reducing labor costs by engaging in unlawful employment

practices does not suffice.   Accordingly, the Court finds that the PAC does not allege facts

sufficient to support the claim that Defendants were operating as a single enterprise.   The Court

thus respectfully recommends that each Plaintiff's claims be permitted to proceed only as against

the particular Defendants that Plaintiff worked for and only for violations occurring during the

period of employment, subject to the Court's discussion on joint employment below.

### 4.        Joint Employer Allegations

"[J]oint employment arises when the employee performs work which *simultaneously*

benefits two or more employers and one employer is acting directly or indirectly in the interest of

the other employer (or employers) in relation to the employee."   *Chuchuca v. Creative Customs*

*Cabinets Inc.*, No. 13-CV-2506, 2014 WL 6674583, at *8 (E.D.N.Y. Nov. 25, 2014) (citations

and internal quotation marks omitted) (emphasis in original); *see also Zheng v. Liberty Apparel*

*Co., Inc.*, 355 F.3d 61, 66 (2d Cir. 2003) ("The regulations promulgated under the FLSA

expressly recognize that a worker may be employed by more than one entity at the same time.").

In this regard, the regulation governing joint employment provides as follows:

> A determination of whether the employment by the employers is to
> be considered joint employment or separate and distinct
> employment for purposes of the act depends upon all the facts in
> the particular case.  If all the relevant facts establish that two or
> more employers are acting entirely independently of each other and
> are completely disassociated with respect to the employment of a
> particular employee, who during the same workweek performs

14

> work for more than one employer, each employer may disregard all work performed by the employee for the other employer (or employers) in determining his own responsibilities under the Act. On the other hand, if the facts establish that the employee is employed jointly by two or more employers, i.e., that employment by one employer is not completely disassociated from employment by the other employer(s), all of the employee's work for all of the joint employers during the workweek is considered as one employment for purposes of the Act.   In this event, all joint employers are responsible, both individually and jointly, for compliance with all of the applicable provisions of the act, including the overtime provisions, with respect to the entire employment for the particular workweek.

29 C.F.R. § 791.2(a) (footnotes omitted).   Thus, "employees generally should be paid overtime for working more than the number of hours specified in section 7(a), irrespective of the number of employers they have."   *Id.* n.5.   Although an "employer should not be held responsible for an employee's action in seeking, independently, additional part-time employment, . . . where two or more employers stand in the position of 'joint employers' and permit or require the employee to work more than [forty hours per week] . . . , both the letter and the spirit of the statute require payment of overtime."   *Id.*

Where an employee "performs work which simultaneously benefits two or more employers, or works for two or more employers at different times during the workweek, a joint employment relationship generally will be considered" in the following situations:

> (1) Where there is an arrangement between the employers to share the employee's services, as, for example, to interchange employees; or
>
> (2) Where one employer is acting directly or indirectly in the interest of the other employer (or employers) in relation to the employee; or
>
> (3) Where the employers are not completely disassociated with respect to the employment of a particular employee and may be deemed to share control of the employee, directly or indirectly, by

15

reason of the fact that one employer controls, is controlled by, or is under common control with the other employer.

*Id.* 791.2(b) (footnotes omitted).[2]

The Court easily disposes of any claim arguably asserted in the PAC that Pena was jointly employed by all Defendants.   As previously noted, the PAC alleges that Pena worked exclusively in the Riverhead store.   The PAC alleges no facts to support a reasonable inference that Pena's work at the Riverhead store benefitted the other Stores.   Nor are there any facts alleged to suggest that the other Stores somehow controlled Pena's employment conditions while he worked at the Riverhead Store or vice versa, or that there was some arrangement to share his services.   Therefore, the Court finds that the PAC fails to allege that the Defendants were joint employers with regard to Plaintiff Pena.

The Court reaches a different conclusion with respect to Plaintiff Marte, who allegedly worked at all three Stores during the same workweeks.   The allegations in the PAC, if true, indicate that each Store individually maintained control and supervision over Marte while he worked there, including controlling timekeeping and payroll, yet the Stores were not "entirely independent[]" and "completely disassociated," 29 C.F.R. § 791.2(a), as Marte worked for Nunez Fermin at all three locations.   This is sufficient to find that each Store was an "employer" of Marte at all three locations for the relevant time periods.

### 5.    Successor Liability

Although not specifically pled in the original complaint, Defendants argue in their motion

---

[2]   In determining whether an entity is an employer, courts in this Circuit look to the "economic reality" of the relationship, weighing the following factors set forth in *Carter v. Dutchess Cmty. Coll.,* 735 F.2d 8, 12 (2d Cir. 1984) and *Zheng v. Liberty Apparel Co., Inc.,* 355 F.3d 61, 67 (2d Cir. Cir. 2003).

to dismiss that to the extent the complaint can be construed to assert a theory of successor liability, the complaint fails to do so.   In response, Plaintiffs argue in their opposition to the motion to dismiss that the complaint alleges sufficient facts to support successor liability.

In the PAC, Plaintiffs again do not specifically assert successor liability.   In addition, Plaintiffs' papers supporting their request to amend also do not specifically address this issue and instead generally assert that the proposed amendment "provide[s] information that addresses the extent of Defendants' liability."   ECF No. 22 at 5-6.   To the extent the PAC can be interpreted to assert successor liability, the Court addresses this theory of liability below.

The FLSA itself does not address the issue of liability for successor employers. Although the Second Circuit has not yet decided the proper standard for determining successor liability for FLSA violations – the traditional common law approach or the broader substantial continuity test – several courts in the Eastern District of New York that have dealt with successor liability under the FLSA have applied New York's common law successor liability test.   *See Vasquez v. Ranieri Cheese Corp.*, No. 07-CV-464, 2010 WL 1223606, at *10 (E.D.N.Y. Mar. 26, 2010); *Kaur v. Royal Arcadia Palace, Inc.*, 643 F. Supp. 2d 276, 289 n.10 (E.D.N.Y. 2007).

Under the common law, a purchaser of the assets of a corporation is generally not liable for the seller's liabilities, *New York v. Nat'l Serv. Indus., Inc.*, 460 F.3d 201, 209 (2d Cir. 2006), with the following exceptions:

> (1) [the successor] expressly or impliedly assumed the predecessor's tort liability; (2) there was a consolidation or merger of seller and purchaser; (3) the purchasing corporation was a mere continuation of the selling corporation; or (4) the transaction is entered into fraudulently to escape such obligations.

*Id.*   The second and third exceptions referred to above, i.e., the "de facto merger" and "mere

continuation" exceptions – have been recognized to be "so similar that they may be considered a single exception."   *Cargo Partner AG v. Albatrans, Inc.*, 352 F.3d 41, 45 n.3 (2d Cir. 2003). Importantly, it has been held that where ownership actually changes hands, there can be no finding of the de facto merger (or mere continuation) exception.   *See Battino v. Cornelia Fifth Ave., LLC*, 861 F. Supp. 2d 393, 401 (S.D.N.Y. 2012).

Plaintiffs argue that the facts alleged support the first exception under the common law approach, to wit, the successor "expressly or impliedly assumed the predecessor's tort liability." In this regard, Plaintiffs assert that "[a]ny corporation purchasing the assets of another corporation is tasked with conducting due diligence with respect to potential or actual claims resulting from illegal employment practices associated with the acquired assets" and [b]ecause the successor corporations maintained the same illegal employment practices, they cannot now claim they did not have actual or constructive notice of potential liabilities related to their unlawful employment practices . . . [and t]hus, they expressly or impliedly assumed those liabilities upon completion of the transaction."   ECF 19-1 at 7-8.   Contrary to Plaintiffs' argument, the PAC offers no facts to support an express assumption of liability by any of the Defendant successor companies.   Moreover, to the extent Plaintiffs attempt to allege an implied assumption, the PAC fails there as well.   Plaintiffs essentially argue that because "any" purchasing company through due diligence would have discovered the predecessor's illegal employment practices, the instant successor Defendant companies impliedly assumed the predecessor's liability.   These vague allegations – which are devoid of any supporting facts and are based on nothing but conjecture – simply do not support a reasonable inference that the Defendants impliedly assumed their predecessor liabilities.   There are no allegations, for

example, that any of the predecessor companies had any outstanding liabilities at the time of the purchases or that the Defendant successor companies were actually aware of any such liabilities. Accordingly, the Court finds that the PAC fails to allege successor liability under the traditional common law approach.

Under the second test, substantial continuity, courts "focus[ ] on whether the new company has 'acquired substantial assets of its predecessor and continued, without interruption or substantial change, the predecessor's business operations.'"   *Bautista v. Beyond Thai Kitchen, Inc.*, No. 14 Civ. 4335, 2015 WL 5459737, at *5 (S.D.N.Y. Sept. 17, 2015) (quoting *Fall River Dyeing & Finishing Corp. v. NLRB*, 482 U.S. 27, 43 (1987)).   Under this test, courts generally analyze nine factors:

> (1) whether the successor company had notice of the charge or pending lawsuit prior to acquiring the business or assets of the predecessor; (2) the ability of the predecessor to provide relief; (3) whether there has been a substantial continuity of business operations; (4) whether the new employer uses the same plant; (5) whether he uses the same or substantially the same work force; (6) whether he uses the same or substantially the same supervisory personnel; (7) whether the same jobs exist under substantially the same working conditions; (8) whether he uses the same machinery, equipment, and methods of production; and (9) whether he produces the same product.

*Id.* (citing *Musikiwamba v. ESSI, Inc.*, 760 F.2d 740, 750 (7th Cir. 1985)).   Although no one factor is determinative, courts have recognized that the first two factors, viz. notice of the claim prior to acquisition and the ability of the predecessor to provide relief, is "critical."   *Lewis v. Blackman Plumbing Supply L.L.C.*, 51 F. Supp. 3d 289, 314 (S.D.N.Y. 2014) (quoting *Musikiwamba*, 760 F.2d at 750).

Plaintiffs argue that the PAC alleges facts that support the contention that the successor

stores had actual or constructive notice of the "charge or pending lawsuit" when they purchased the businesses because the Defendants' unlawful employment practices – such as failing to pay Plaintiffs overtime wages and paying Plaintiffs in cash – were carried out by all Defendants, both successor and predecessor.   The Court disagrees.   To satisfy the notice element, Plaintiffs must allege that the successor companies had notice of a potential claim.   *See Lewis v. Blackman Plumbing Supply L.L.C.*, 51 F. Supp. 3d 289, 316 (S.D.N.Y. 2014).   The instant suit was filed in January 2016, and Plaintiffs do not allege that they filed any formal or informal complaints prior to the purchases, which occurred in 2011, 2013 and 2015.   In fact, other than some vague allegations that Mr. Nunez had an ownership interest in all locations at some unidentified time, the PAC is silent with regard to notice given to the subsequent owners, which were all separate entities.   *See Steinbach v. Hubbard*, 51 F.3d 843, 847 (2d Cir. 1995) ("The principal reason for the notice requirement is to ensure fairness by guaranteeing that a successor had an opportunity to protect against liability by negotiating a lower price or indemnity clause.") (citing *Golden State Bottling, Inc. v. NLRB*, 414 U.S. 168, 185 (1973)).   The PAC is also silent as to the ability of the predecessor companies to provide relief.   Accordingly, the Court finds that the PAC fails to allege successor liability under both tests.

> **D.      Severance**

Lastly, Defendants request that if the Court finds that dismissal of all claims is not warranted, the Court sever the complaint since the Defendants were improperly joined.   Because the Court finds that the three Stores were joint employers with regard to Plaintiff Marte and that both Plaintiffs have stated a claim against the Riverhead store, the Court respectfully recommends that Defendants' request be denied.

**CONCLUSION**

For the reasons stated above, the Court finds that the complaint fails to state a claim for unpaid overtime and, thus, respectfully recommends that Defendants' motion to dismiss these claims in the original complaint be granted.   The Court further reports and recommends that Plaintiffs' motion for leave to file an amended complaint should be granted to the extent that (1) Plaintiff Pena, who worked exclusively in the Riverhead location, states a claim for overtime pay as against each Riverhead Defendant for violations occurring during the time Pena was employed by that particular Defendant only; and (2) Plaintiff Marte, who worked at all three locations, states a claim for overtime pay as against each Defendant for violations occurring during the time Marte was employed by that particular Defendant only.   The Court recommends that Plaintiffs' motion for leave to amend should be denied to the extent the proposed pleading fails to state a claim of single enterprise or successor liability.   Lastly, the Court recommends that Defendants' motion to sever Plaintiffs' claims against each individual defendant be denied.

**OBJECTIONS**

A copy of this Report and Recommendation is being electronically filed on the date below.   Any objections to this Report and Recommendation must be filed with the Clerk of the Court with a courtesy copy to the undersigned within 14 days of service.   Failure to file objections within this period waives the right to appeal the District Court's Order.   See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; *Beverly v. Walker*, 118 F.3d 900, 902 (2d Cir. 1997); *Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir. 1996).

Dated: Central Islip, New York
       January 18, 2017

_____/s/_____
ARLENE R. LINDSAY
United States Magistrate Judge